# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHEAST PROPERTIES, LLC., | CASE NO.: 11-cv-1194 LJO–BAM |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE** |
| vs. | |
| CHICAGO TITLE COMPANY, DANA SAWYERS, and COMMERCE LAND TITLE, INC., | **(Doc. 30)** |
| Defendants. | |

Before the Court is Defendants' Motion to Transfer Venue or Alternatively Dismiss Defendant Dana Sawyers For Lack of Personal Jurisdiction. (Doc. 30). The motion for change of venue was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. No timely opposition to Defendants' Motion was filed and pursuant to Local Rule 230(c), the Court vacated the hearing scheduled for June 15, 2012. (Doc. 46).[1] For the reasons that follow, Defendants' Motion to Transfer

---

[1] Pursuant to Local Rule 230(c), Plaintiff was required to file either an opposition or a notice of non-opposition to Defendants' Motion no later than May 31, 2012. Plaintiff failed to do so. The Court vacated the hearing because Plaintiff was not entitled to be heard at oral argument in opposition to the motion. *See* Local Rule 230(c). On June 19, 2012, over two weeks after Plaintiff's opposition was due, Plaintiff filed a Motion to "reopen the case" (Doc. 46) to which Defendant replied (Doc. 51). Plaintiff's motion to reopen is not a model of clarity. The "motion" consists of an affidavit penned by Daniel Gluhaich, a managing member of Northeast Properties. According to Mr. Gluhaich, who is not an attorney in this case, "good cause exists for inadvertent neglect in that Samuel Chuck, Esq. a key witness on all issues in this matter refused to sign an affidavit absolutely necessary to Defendants' motions." (Doc. 46). No facts supporting this contention are stated in the motion itself. Instead, Plaintiff's counsel asks the Court to comb through 24 exhibits, consisting of a jumble of correspondence (submitted in no apparent order) from an unrelated lawsuit. It is not the duty of the Court to wade through Plaintiff's exhibits for facts that might support Plaintiff's "motion to reopen." Accordingly,

1

Venue is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Northeast Properties, LLC's ("Northeast Properties" or "Plaintiff") allegations against Defendants, Chicago Title Company of Texas, Dana Sawyers, and Commerce Land Title, Inc. (collectively "Defendants") arise from a 2007 multi-state real estate transaction involving five Jiffy-Lube stores located in New York and Pennsylvania ("Transaction").

### *The Dallas Lawsuit*

In 2009, Northeast Properties filed its first lawsuit in the 298th Judicial District Court for Dallas County, Texas (the "Dallas Lawsuit") involving the Transaction. (Selander Decl, Ex. A at ¶ 4; Dallas Lawsuit Orig. Pet., Ex. 1). There, Northeast Properties was the seller, BFOIL, LLC ("BFOIL") was the pass-through buyer and John and Debra Reckling (the "Recklings") were the ultimate buyers. (Selander Decl. at ¶ 4). The parties agreed that Defendant Commerce Title would serve as the closing and escrow agent for the Transaction and that the Transaction would be closed in Commerce Title's Dallas office. *Id.* The Transaction required three separate closings. Three Jiffy-Lube stores were to be conveyed in the first closing and the two remaining stores were to be conveyed in the second and third closings. *Id.* The contract governing the Transaction provided for liquidated damages in the amount of $500,000.00, if the Recklings failed to proceed to the second and third closings. It also required the Recklings to deliver to Northeast Properties at the first closing a promissory note in the amount of $500,000.00, secured by a second lien deed of trust on an apartment complex located in Fresno, California (the "Reckling Deed of Trust") which would be inferior to a first lien deed of trust in the amount of $680,000.00. It also required a mortgagee's title policy relating to the Reckling Deed of Trust to be issued by Chicago Title's office in Fresno, California (the "Title Policy"). *Id.* The first closing of the Transaction closed in Commerce Title's Dallas office in late December of 2007. *Id.* The second and third closings never occurred. *Id.*

In the Dallas Lawsuit, Northeast Properties alleged that Commerce Title and others failed to

---

Plaintiff's "motion to re-open" is **DENIED**. (Doc. 46).

2

promptly record the Reckling Deed of Trust in the Fresno County Deed Records and to issue the Title Policy, which allegedly caused Northeast Properties to suffer damages. Northeast Properties' causes of action in the Dallas lawsuit were listed as negligence, breach of fiduciary duty, deceptive trade practices, breach of contract and promissory estoppel. Northeast Properties also sought to recover its attorneys' fees and costs. (Selander Decl, Ex. A at ¶ 5; Dallas Lawsuit Orig. Pet., Ex.1).

On April 26, 2010, the Dallas Court issued a notice to the parties that the Dallas Lawsuit was scheduled for trial on September 28, 2010. (Selander Decl, Ex. 2). Between February 2010 and August 2010, the parties to the Dallas Lawsuit served upon each other, and responded to, various forms of written discovery including requests for disclosure, interrogatories and requests for production of documents and they began making preliminary arrangements for scheduling depositions of the parties and various witnesses. (Selander Decl. at ¶ 7).

On January 3, 2011, counsel for Northeast Properties filed a motion to withdraw for non-payment of fees. *(Id.* at ¶ 13). Northeast Properties also requested a continuance of the March 3, 2011 jury trial setting in light of that motion. *(Id.* at ¶ 14.). On March 3, 2011, the Dallas Court granted the motion to withdraw. *(Id.* at ¶ 15). It then re-set the jury trial to July 7, 2011. *(Id.* at ¶ 16).

On May 31, 2011, Commerce Title filed a no-evidence motion for summary judgment against Northeast Properties and set it for hearing on July l, 2011. (Selander Decl., Ex. 10). Sometime after, Northeast Properties filed a notice of non-suit. On July 13, 2011, based on Northeast Properties notice of non-suit, the Dallas Court entered an order dismissing the Dallas Lawsuit without prejudice. (Selander Decl., Ex. 11).

Four days later, on July 17, 2011, Northeast Properties, now with new counsel, filed the present lawsuit in this Court. (Doc. 1).

***The Fresno Lawsuit***

The Fresno lawsuit filed on July 17, 2011 is based upon the same facts and against some of the same parties as the Dallas lawsuit. In the instant action, Northeast Properties alleges that Commerce Title and Dana Sawyers failed to promptly record the Reckling Deed of Trust in the Fresno County Deed Records and to issue the Title Policy, which allowed the Recklings to misappropriate $680,000 of Plaintiff's money, causing Northeast Properties damages. (Pl's. Am. Compl at ¶ 2, Doc. 6). Plaintiff's

amended complaint alleges two claims: (1) breach of written escrow and (2) intentional misrepresentation. (*Id.* at ¶ 2, 7). This lawsuit added Dana Sawyers as a defendant and named her in her individual capacity. (*Id.* at ¶ 6). At all times relevant to this suit, Sawyers was employed at Commerce Title's office in Dallas as an escrow assistant who assisted the duly licensed escrow officers. (Sawyers Decl., Ex. B ¶ 7).

Plaintiff alleges venue in this District is proper because:

> The cause of action accrued in Fresno county when Plaintiff's were first damaged by breach of written escrow agreement to record a Second Deed of Trust on the Maple property by defendants Chicago Title of Texas and Commerce Title by Sawyers acting in the course and scope of her agency for Chicago Title failure [sic] to record a second deed of trust in the records of the Fresno County records before closing on December 7, 2011 on 215 Maple Street in Fresno, CA and issue a Lenders Title Policy on Northeast Properties, LLC Note and Deed of Trust and allow John and Deborah Reckling to misappropriate $680,000.00 of Plaintiff's monies due on the note which did not become ascertainable until July 18, 2008, and was not discovered and concealed and suppressed until revealed by Sawyers on or about September 18, 2008.

(Pl.'s Am. Comp'l. at ¶ 2.)

Defendants' now challenge Plaintiff's choice of venue, and asks that this Court exercise its discretion and for the convenience of all, transfer venue to the Northern District of Texas.

**STANDARD OF REVIEW**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

To support a motion for transfer, the moving party must establish: 'that venue is proper in the transferor district; that the transferee district is one where the action might have been brought; and that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). In deciding whether to transfer on grounds of convenience and in the interest of justice, the court considers the following eight factors, where relevant: (1) the location where the relevant agreements

were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the cost of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *GNC Franchising, Inc.*, 211 F.3d at 498-99.

The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer. *Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *see also Los Angeles Memorial Coliseum Com. v. National Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981) *aff'd*, 726 F.2d 1381, 1399 (9th Cir. 1984). It is not enough for defendant merely to show that it prefers another forum nor will transfer be allowed if the result is merely to shift the inconvenience from one party to another. *Van Dusen,* 376 U.S. at 645-46.

## ANALYSIS & DISCUSSION

Defendants do not deny that this action could have been brought in the Eastern District of California. However, Defendants contend that because this action was initially filed in a related lawsuit in the 298th Judicial District Court for Dallas County, Texas and litigated for eighteen months there, that fact alone indicates that many of the convenience factors weigh strongly in favor of transfer. The Court agrees.

The argument that weighs heaviest in favor of transfer is the previous related lawsuit filed in Dallas, Texas. In 2009, Plaintiff filed a lawsuit based upon these same facts and against some of the same parties in the instant motion. Plaintiff chose Texas as the forum for that suit and spent eighteen months litigating in that forum against Defendants Commerce Title and Chicago Title of Texas. The parties engaged in extensive discovery, and Northeast Properties sent its counsel and corporate representative to Dallas for depositions. Eventually, Commerce Title filed a motion for summary judgment and set it for hearing. On the eve of the summary judgment hearing, Northeast Properties filed a notice of non-suit and asked to dismiss the Dallas Lawsuit without prejudice. Plaintiff then re-filed its claims in this Court four days after the dismissal. (Selander Decl., Ex. A ¶ 17). In re-filing this lawsuit, Northeast Properties added Dana Sawyers as an additional Defendant. Dana Sawyers has no connection to California. Sawyers, is a resident of Texas. She was employed at Commerce Title's

Dallas Office as an escrow assistant.

Dallas Office as an escrow assistant. All of Sawyer's activities in connection with this lawsuit were performed in that capacity in the Dallas office. (Sawyers Decl., Ex. B ¶ 8).

Although prior litigation itself is not a factor used by the Court to determine the convenience of the parties, or the interests of justice, as seen below, the prior litigation influences the various convenience factors in favor of transferring this case.

First, the location where the relevant agreements were negotiated and executed all relate to Defendants' offices in Texas. The parties agreed that Defendant Commerce Title would serve as the closing and escrow agent, and the transaction would be closed in Commerce Title's Dallas office. It is the defects that arose during that closing which are directly at issue in the instant case. (Pl's Compl. at 16, Doc. 1). Further, the escrow provisions in the Contract of Sale between Northeast Properties, BFOIL, and the Recklings state that escrow would be conducted in accordance with the "applicable law and custom and practice of the community in which the Escrow Holder is located." (Doc. 30 at 12). This factor favors transfer to the Northern District of Texas because the transaction was closed and executed in Texas, and the only agreement relating to Defendants' duties incorporated the "applicable law and custom and practice" of Texas.

The balance of the remaining factors weighs in favor of transfer. While Plaintiff chose the Fresno division as its forum, the parties have very limited ties to the Eastern District of California, and a substantial part of the events giving rise to the claims in this case did not take place in this District. 28 U.S.C. § 1391 (b). The Eastern District's only relation to this lawsuit is as the home of the collateral. However, the location of the collateral is only tangentially related to the objective of this suit–whether Defendants' conduct in closing was in error. Neither party resides in this District and only Defendant Chicago Title has offices in Fresno;[2] the alleged breach of written escrow and intentional misrepresentation occurred in Texas; the witnesses and evidence are located in Texas; the ease of access to sources of proof is in Dallas, Texas; and the cost of litigation is likely to decrease if venue is transferred to Defendants' place of residence, since significant discovery and litigation on this matter has already taken place in Texas, and most of the witnesses and evidence are located there.

---

[2] The Court notes Chicago Title has 141 offices in the state of California alone. *See* https://www.ctic.com/Office.aspx?State=CA&County=&Brand=CTI&Business=&Operation=

Finally, administrative considerations weigh heavily in favor of transfer. The Eastern District of California has the unique distinction of having the heaviest caseload burden of all federal districts in the Country. Specifically, the Eastern District of California has the highest weighted filings per judgeship in the Country. *Responding to the Growing Need for Federal Judgeships: The Federal Judgeship Act of 2009 Before the S. Comm. On the Judiciary*, 111th Cong. (2009) (statement on the Honorable Lawrence J. O'Neill, United States District Judge). Despite internal efforts to alleviate the caseload by the Chief Judge of the Ninth Circuit Court of Appeals and the Chief Judge of the Eastern District of California, the Eastern District of California continues to be overly-burdened by its crushing caseload. *See, Justice Kennedy Joins Call for New Judgeships For Eastern California Court*, United States Courts for the Ninth Circuit Public Information Office (Aug. 30, 2010);[3] *see also*, *Eastern District of California Swamped by Prisoner Lawsuits*, United States Courts, The Third Branch (July 2010);[4] *Senator Feinstein Introduces Measure to Create a Temporary Federal Judgeship for the Eastern District*, Office of United States Senator Dianne Feinstein (January 9, 2009).[5] Based on the singular circumstances of this district, the interests of the parties in receiving timely access to justice weighs in favor of transfer.

Weighing the above factors, the Court concludes that it is most convenient and in the interest of justice to transfer the instant case to the Northern District of Texas. That district, where the great majority, if not all, of the agreements were executed, where virtually all witnesses and documents are located, and where the operative event–the closing–occurred is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2).

/////

/////

---

[3] This press release is available at http://www.caed.uscourts.gov/caed/DOCUMENTS/News/Justice_Kennedy_CAE_Remarks.pdf.

[4] http://www.uscourts.gov/news/TheThirdBranch/10-07-01/Eastern_District_of_California_Swamped_by_Prisoner_Lawsuits.aspx

[5] http://feinstein.senate.gov/public/index.cfm?FuseAction=NewsRoom.PressReleases&ContentRecord_id=bc697310-9256-0bb6-574c-281d1c3736f5&Region_id=&Issue_id=.

/////

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer Venue is **GRANTED**. This Court further:

    1.    DIRECTS the Clerk of the Court to TRANSFER this action to the United States District Court for the Northern District of Texas;

    2.    DENIES Defendants' Motion to Alternatively Dismiss Defendant Dana Sayers for Lack of Personal Jurisdiction as MOOT. (Doc. 30).

**IT IS SO ORDERED.**

Dated:   **June 27, 2012**          /s/ **Barbara A. McAuliffe**
                                                  **UNITED STATES MAGISTRATE JUDGE**